# Exhibit A

| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | (2/28/11) CCG N001 |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT, Law _____ DIVISION

No. 15 L 062046

Dr. Nanciann Gatta and Fernando Perez

_____
(Name all parties)

v.

Board of Education of Niles Township High School, District 219

Mark Sproat, David Ko, and Anne Roloff

Please serve defendant Board of Education
of Niles township High School at:

7700 Gross Point Rd.

Skokie, IL 60077

⊙ SUMMONS ◯ ALIAS SUMMONS

**To each Defendant:**                     Board of Education of Niles Township High Schol

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

◯ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

| ⊙ District 2 - Skokie | ◯ District 3 - Rolling Meadows | ◯ District 4 - Maywood |
|---|---|---|
| 5600 Old Orchard Rd. | 2121 Euclid | 1500 Maybrook Ave. |
| Skokie, IL 60077 | Rolling Meadows, IL 60008 | Maywood, IL 60153 |
| ◯ District 5 - Bridgeview | ◯ District 6 - Markham | ◯ Child Support |
| 10220 S. 76th Ave. | 16501 S. Kedzie Pkwy. | 28 North Clark St., Room 200 |
| Bridgeview, IL 60455 | Markham, IL 60428 | Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 22545

Name: Morgan & Bley, Ltd.

Atty. for: Plaintiffs

Address: 900 W. Jackson Blvd Suite 4E

City/State/Zip: Chicago, IL 60607

Telephone: 312.243.0006

WITNESS, _____ OCT 21 2015

DOROTHY BROWN

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)    (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

(2/28/11) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, Law_____ DIVISION

No. 15 L 062046

Please serve defendant Board of Education
of Niles township High School at:

7700 Gross Point Rd.

Skokie, IL 60077

Dr. Nanciann Gatta and Fernando Perez

(Name all parties)

v.

Board of Education of Niles Township High School, District 219

Mark Sproat, David Ko, and Anne Roloff

⦿ SUMMONS ◯ ALIAS SUMMONS

To each Defendant:                Board of Education of Niles Township High Schol

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

◯ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

⦿ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL  60077

◯ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL  60008

◯ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL  60153

◯ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL  60455

◯ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL  60428

◯ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois  60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 22545

Name: Morgan & Bley, Ltd.

Atty. for: Plaintiffs

Address: 900 W. Jackson Blvd Suite 4E

City/State/Zip: Chicago, IL 60607

Telephone: 312.243.0006

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____,

_____
Clerk of Court

Date of service: _____,
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code)   (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

(2/28/11) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, Law _____ DIVISION

No. 15 L 062046

Please serve defendant David Ko at:

Dr. Nanciann Gatta and Fernando Perez
_____
(Name all parties)

4024 Church Street

v.

Skokie, IL 60076

Board of Education of Niles Township High School, District 219

Mark Sproat, David Ko, and Anne Roloff

## ⊙ SUMMONS ◯ ALIAS SUMMONS

To each Defendant:                    David Ko

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

◯   Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

⊙ **District 2 - Skokie**
  5600 Old Orchard Rd.
  Skokie, IL 60077

◯ **District 3 - Rolling Meadows**
  2121 Euclid
  Rolling Meadows, IL 60008

◯ **District 4 - Maywood**
  1500 Maybrook Ave.
  Maywood, IL 60153

◯ **District 5 - Bridgeview**
  10220 S. 76th Ave.
  Bridgeview, IL 60455

◯ **District 6 - Markham**
  16501 S. Kedzie Pkwy.
  Markham, IL 60428

◯ **Child Support**
  28 North Clark St., Room 200
  Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 22545

Name: Morgan & Bley, Ltd.

Atty. for: Plaintiffs

Address: 900 W. Jackson Blvd Suite 4E

City/State/Zip: Chicago, IL 60607

Telephone: 312.243.0006

WITNESS, _____

_____
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)   (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS



DOC.TYPE:    SUMMONS
CASE NUMBER:   15L062046
DEFENDANT
KO, DAVID
4024 CHURCH ST
SKOKIE IL 60076

DIE DATE          DIST
11/11/2015        076 SK

MSPENCE

SERVICE INFO:
30
DAY SERVICE

ATTACHED FEE:  $0.00

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** (2/28/11) CCG N001 |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, <u>Law</u> DIVISION

No. <u>15 L 062046</u>

Dr. Nanciann Gatta and Fernando Perez

(Name all parties)

v.

Please serve defendant Mark Sproat at:

7708 Laramie Ave.

Skokie, IL 60077

Board of Education of Niles Township High School, District 219

Mark Sproat, David Ko, and Anne Roloff

◉ SUMMONS  ◯ ALIAS SUMMONS

Mark Sproat

**To each Defendant:**

    **YOU ARE SUMMONED** and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

◯ **Richard J. Daley Center, 50 W. Washington, Room** _____, **Chicago, Illinois 60602**

| | | |
|---|---|---|
| ◉ **District 2 - Skokie**<br>5600 Old Orchard Rd.<br>Skokie, IL 60077 | ◯ **District 3 - Rolling Meadows**<br>2121 Euclid<br>Rolling Meadows, IL 60008 | ◯ **District 4 - Maywood**<br>1500 Maybrook Ave.<br>Maywood, IL 60153 |
| ◯ **District 5 - Bridgeview**<br>10220 S. 76th Ave.<br>Bridgeview, IL 60455 | ◯ **District 6 - Markham**<br>16501 S. Kedzie Pkwy.<br>Markham, IL 60428 | ◯ **Child Support**<br>28 North Clark St., Room 200<br>Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

    This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

| | |
|---|---|
| Atty. No.: <u>22545</u> | WITNESS, <u>DOROTHY BROWN OCT 21 2015</u> |
| Name: <u>Morgan & Bley, Ltd.</u> | |
| Atty. for: <u>Plaintiffs</u> | |
| Address: <u>900 W. Jackson Blvd Suite 4E</u> | _____<br>Clerk of Court |
| City/State/Zip: <u>Chicago, IL 60607</u> | Date of service: _____, _____ |
| Telephone: <u>312.243.0006</u> | (To be inserted by officer on copy left with defendant or other person) |

Service by Facsimile Transmission will be accepted at: _____

(Area Code)  (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS** |

(2/28/11) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, <u>Law</u> DIVISION

Dr. Nanciann Gatta and Fernando Perez

(Name all parties)

v.

Board of Education of Niles Township High School, District 219

Mark Sproat, David Ko, and Anne Roloff

No. <u>15 L 062046</u>

Please serve defendant Mark Sproat at:

7708 Laramie Ave.

Skokie, IL 60077

### ● SUMMONS ○ ALIAS SUMMONS
Mark Sproat

To each Defendant:

   **YOU ARE SUMMONED** and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

○ **Richard J. Daley Center, 50 W. Washington, Room** _____, **Chicago, Illinois 60602**

◉ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

○ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

○ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

○ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

○ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60428

○ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

   This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: <u>22545</u>

Name: <u>Morgan & Bley, Ltd.</u>

Atty. for: <u>Plaintiffs</u>

Address: <u>900 W. Jackson Blvd Suite 4E</u>

City/State/Zip: <u>Chicago, IL 60607</u>

Telephone: <u>312.243.0006</u>

WITNESS, DOROTHY BROWN OCT 21 2015

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

(Area Code)     (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| Fernando Perez and Dr. Nanciann Gatta, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. |
| v. | ) | |
| | ) | |
| Board of Education of Niles Township | ) | |
| High School District 219, Mark Sproat, | ) | |
| David Ko, and Anne Roloff, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND OTHER RELIEF

Now come the Plaintiffs, Fernando Perez ("Perez") Dr. Nanciann Gatta ("Dr. Gatta"), by and through their attorneys, Keevan D. Morgan, Alanna G. Morgan, and Morgan & Bley, Ltd., and Thomas Anthony Durkin, Christopher Grohman, Robin Waters, and Durkin, Roberts, & Grohman, and complaining of the Defendants, Board of Education of Niles Township High School District ("the District") 219 ("the Board"), Mark Sproat ("Sproat"), David Ko ("Ko"), and Anne Roloff ("Roloff"), bring this action for violations of their civil rights under the United States Constitution and the Civil Rights Act, 42 U. S. C. §§ 1983, and under Illinois state law, alleging as follows:

### I. Synopsis

1. The Board, now under the sway of a recently-elected anti-Gatta new majority, is in the process of dismissing Dr. Gatta as superintendent of the District. The process is window dressing, as Sproat had always planned to terminate Dr. Gatta without honoring her contract if he were elected. Dr. Gatta has filed a separate lawsuit in Cook County Circuit Court wherein Dr. Gatta is seeking to enjoin the Board from carrying out her termination and for damages for breach of her contract and for defamation to her otherwise widely heralded and praised professional and personal reputation.

2. The Board has conducted its operation against Dr. Gatta in "closed session" in order to hide those proceedings from the public and in order to deny Dr. Gatta a fair chance to defend herself, hoping that by tarnishing her reputation, it can "define" Dr. Gatta before the public so that she can never rehabilitate herself. Upon information and belief, the Board has retained a high-priced professional public relations firm upon which it will lavish large monetary rewards for creating, pushing, and convincing the public into believing, its "definition' of Dr. Gatta's character.

3. Besides its offensive operations against Dr. Gatta, the Board has also undertaken defensive operations. In that regard, the Board seeks not only to mold the public's perception of Dr. Gatta to its liking, but to suppress counter-opinion. In that regard, the Board sent the following email ("the Shut-Up Directive") to 100% of all District 219 employees:

> From: Anne Roloff <annrol@d219.org>
> Date: Fri, Sep 25, 2015 at 9:20 AM
> Subject: Important message re: Tribune story
> To: All <all@d219.org>
>
> Dear D219 Staff,
>
> As many of you are aware, the Chicago Tribune published an article today regarding the situation with Dr. Gatta and Mr. Heintz. An article like this has the potential to cause a lot of disruption in our organization, but as information unfolds in the coming weeks, it is important for us to focus on why we are here: to educate each and every child who comes through our doors every day. We must continue to move forward and look ahead, working together for the benefit of every single student.
>
> Your professionalism during this time is crucial. *If you are contacted by any representative of the media, you must refer them to Jim Szczepaniak. All other inquiries will go through his office as well.* [emphasis added]
>
> During difficult times like these, it is critical that we come together as a community. Our schools are strong, thanks to your dedication and commitment to the students and families of District 219. Together we will move forward.

Thank you for all that you do!
Sincerely,
Anne Roloff

4. The Shut-Up Directive tells its recipients in no uncertain words to remain silent and refer all inquiries concerning the Board/Gatta issues to a Board-controlled "official government" mouthpiece, albeit such matters are of public concern and the Board is using its taxpayers' public funds in its attempts to destroy Dr. Gatta. The Defendants' attempt to silence all District 219's employees violates both the United States and Illinois State Constitutions and Federal law.

5. The Board and the Assistant Superintendent are not persons with whom the recipients of the Shut-Up Directive are normally in contact with in the course of their daily work as teachers, paraprofessionals and teacher aides, maintenance workers, clerical and office staff, transportation and security personnel or other employees, or other employees regarding issues of public importance such as Dr. Gatta's employment or contract, and there is no question of maintaining either discipline by their immediate superiors or harmony among coworkers regarding such matters justifying the Defendants' interference with their basic freedoms as citizens of the United States and the State of Illinois.

6. The subject of Dr. Gatta's employment involves a significant financial interest of District 219's taxpayers, as well as, of course, the public education of the District's children.

**Jurisdiction And Venue**

7. State Courts, including this one, have concurrent jurisdiction to hear cases brought pursuant to 42 U.S.C. §§ 1983. In addition, this Court has jurisdiction to entertain lawsuits asserting a violation of the Illinois Constitution.

8. Venue lies in Cook County because all of the facts complained of occurred in Cook County and all the Defendants are citizens of Cook County and/or are employed in Cook County and ostensibly too the actions complained of under a claim they were within the scope of such employment in Cook County.

### Count 1. Free Speech Civil Rights Violations Under 42 U.S.C. § 1983

### The Parties

9. Perez is a citizen of the State of Illinois, resides in Cook County, and is an employee of District 219.

10. Dr. Gatta is a citizen of the State of Illinois, and resides Cook County.

11. Perez and Dr. Gatta are married.

12. The Board is a facially if not substantively elected board of education that operates two Illinois public high schools in Northern Cook County, Illinois. Its principal offices are also in Northern Cook County.

13. Upon information and belief, Sproat, Ko, and Roloff are all citizens of the State of Illinois and reside in Cook County.

14. Upon information and belief, Sproat is the President of the Board.

15. Upon information and belief, Ko is a member of the Board and its Secretary.

16. Upon information and belief, Roloff is the Acting Superintendent of District 219.

17. Upon information and belief, there are other District 219 employees who would make and/or the option to make, public statements on the issues presented but for the Shut-Up Directive.

### Relevant Law And Constitutional Provisions

18. The law of the United States of America, 42 U. S.C. § 1983, provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

19. The First Amendment to the United States Constitution provides in pertinent part that "Congress shall make no law . . . abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

20. The First Amendment rights to free speech, to free association, and to seek redress of grievances from government are among the rights implicated and protected by 42 U.S.C. § 1983.

21. Article I , Section 4 of the Illinois State Constitution, "Freedom of Speech" provides in pertinent part as follows: "All persons may speak, write and publish freely, being responsible for the abuse of that liberty."

### Dr. Gatta's Long-Standing, Accolade-Filled, Career at District 219

22. Dr. Gatta has a 20-year employment history in the District and has been the Superintendent of the District since July 1, 2008. Prior to becoming Superintendent, Dr. Gatta taught English in the District from 1995 through 2001, when she became Director of English and Fine Arts at one of the District's high schools. During her time as a teacher, Dr. Gatta was a union member and officer. During her tenure as Superintendent, Dr. Gatta has always met or surpassed the student performance and academic improvement goals, which were approved by the Board through their yearly strategic plans, during her stewardship of the District. This is evidence in her consistently stellar evaluations authored by the Board.

23. Dr. Gatta is currently employed under a four-year contract entered into on May 12, 2014 ("the 2014 Contract"), which was entered between her and the Board less than two years into her five-year December 17, 2012, contract because the Board believed it was important to be more transparent to the public about her overall compensation. A copy of the 2014 Contract is in the possession of the Board.

24. Dr. Gatta's 20-year tenure is full of accolades. Any fair and impartial review of her past performance only could conclude that all such accolades were earned and deserved. Even in just the past school year, Dr. Gatta received many awards demonstrating the magnitude of her contributions to the District. These awards include the following:

(a) Dr. Gatta constructed new 21st Century learning environments and infrastructure earning the District numerous awards, most recently the 2015 Outstanding Organization Award given by the United States Green Building Council for its "comprehensive plan to leverage green infrastructure to supercharge the achievement of every student and ensure the next generation of eco-conscious citizens."

(b) Throughout Dr. Gatta's tenure, enrollment in Advanced Placement coursework has increased by 94% without a decrease in 3+ scores and with increased minority representation, which earned the district a spot on the 2014 and 2015 Advanced Placement College Board Honor Roll. The District was one of only 477 Districts in the United States and Canada to receive this award.

(c) Dr. Gatta was also invited to be a guest speaker to the College Board's Superintendent Conference last November 2014 to present on the systemic changes she put in place to create the unprecedented gains in student achievement.

(d) In further recognition of the social equality issues that plagued her township, Dr. Gatta began Classrooms First Consolidation last year which earned her accolades from the Lieutenant Governor of Illinois, Sheila Simon. Two of the nine sender districts to the District are now consolidated with the high school for all curriculum matters.

(e) With the awarding of a $1.3 million grant for the North Suburban Healthcare Foundation last year, this year marked the opening of School Based Health Centers at both high schools. In partnership with Heartland Health, culturally competent care was afforded to all students regardless of their ability to pay. This partnership gave more services to students at a reduced cost to taxpayers. The ribbon cutting ceremony was scheduled for this fall with the attendance of local and federal leaders such as United States Congresswoman Jan Schakowsky who has followed Dr. Gatta's accomplishments and has been actively engaged in many of her progressive educational initiatives throughout her tenure. It further garnered her a speaking engagement at the 75th annual National School Board Conference in March of 2015 to discuss the logistics of bringing health centers into more public schools across the nation.

(f) Dr. Gatta created community outreach programming to include all parents, regardless of their command of the English language. Programming includes the ELL parent center, which was awarded a federal grant with the support of Congresswoman Schakowsky and the Family

Liaison program. These programs translates, in real time, six languages via headset from English to the students' native language and also provide a point person to answer parent questions. In addition, there are ethnic and language specific parent groups.

(g) The 2015 Coming Together in Skokie programming on race has earned National attention, partnering with the Illinois Holocaust Museum and the YWCA. Because of Dr. Gatta's community outreach efforts, she has earned awards from the Indian, Muslim, and Asian communities, as well as the NAACP. Even more significant is the recruitment of faculty and staff to be more representative of the children D219 serves; students now have role models from their race and ethnic background.

(h) In addition, she has made Science Technology Engineering and Mathematics ("STEM") more than a buzzword. The National Science Education Association gives an Outstanding Administrator award to one person in the nation who has made significant contributions to the support of science education. Dr. Gatta was the recipient of this National Award. She began with the construction of research labs and then added new coursework in Scientific Inquiry and Research, Applied Mathematics, Engineering, Computer Science and Robotics. She also expanded science into ELL and bi-lingual classes. Students are now partnering with professors from Northwestern, University of Illinois and Loyola locally, schools as notable as Dartmouth nationally and even internationally notable universities such as Tel Aviv University in Israel. Dr. Gatta also established partnerships with pharmaceutical companies such as Astellas, Abbott, and Argonne National Laboratory. District 219 is now home to the 2015 state champion robotics team and has students representing District 219 at the most prestigious Intel International Science and Engineering Fair (ISEF), the world's largest pre-college competition bringing 1,500 students together from 70 countries around the world; in 2015, seven students were from District 219.

(i) As an administrator, Dr. Gatta worked to balance the needs of students, taxpayers and the Union which were often in conflict with one another. She successfully negotiated two labor contracts with the Union without work stoppage or a strike, unlike the many strikes that occurred prior to her tenure, which are described further below.

(j) Most recently, on August 3, 2015, the District received the Association of School Business Officials International 2014 Certificate of Excellence in Financial Reporting awarded for a high level of commitment to fiscal integrity.

25. It is clear from her documentable record that Dr. Gatta contributed significantly to the growth and stability of the District, making changes and starting initiatives that will benefit students and the community for decades to come.

## The District's Long and Troubled History with Its Teachers' Union

26. District 219 and its employees have had a long history of labor problems, dating as far back as the 1960s. For instance, upon information and belief, and without limitation, these labor problems have included the following:

(a) The first strike authorization by teachers came in October, 1966, when teachers represented by the American Federation of Teachers voted to authorize a strike in order to secure collective bargaining rights. Teachers again authorized a strike in May, 1967 over salary demands. This time, a strike did take place. 85 teachers crossed picket lines, and over 150 parents entered the school to teach. A court ordered an end to the strike the day after it started. Despite the court order, 200 teachers refused to return to school, with 100 calling in "sick." After two days of disruption, the strike was called off by local union officials.

(b) In May 1970, the teachers again authorized a strike over salary. While negotiations continued throughout 1970 and into 1971, the authorization to strike was reaffirmed in March, 1971. The strike threat continued into the 1971-72 school year.

(c) Teachers again authorized a strike in September, 1973 over payment for non-teaching time. Teachers did follow through with their strike threat despite an offer of 8% increase in salary. After five days, teachers accepted a contract with an 8% pay increase in the first year, and a gradually increasing pay increase throughout the life of the three-year contract.

(d) In September 1976, the teachers union again authorized a strike, this time at the cost of seven days of school. When the strike took place, teachers were threatened with firing, which a judge requested the school board delay. This strike ended after seven days.

(e) After another strike in 1979, classes were able to resume only on a modified schedule with teachers who crossed the picket line and substitutes. After 15 days, the strike was ended with double digit salary increases for teachers.

(f) A 1985 strike lasting 11 days ended after the teachers and Board of Education submitted to an arbitrator to solve final details of the contract.

(g) The remainder of the 1980s and early 1990s remained relatively quiet. 1996 saw the next strike action. The Board of Education tried to force teachers back to work, claiming the strike was illegal during arbitration sessions, though teachers remained on strike. As the strike wore on, some of the fall sports teams were forced to forfeit their final regular season games and their state playoff games. The situation worsened when it was learned that the federal mediator had taken a week off to attend a conference at a resort. The Illinois Labor Relations Board publicly condemned both sides for failing to work in earnest to end the strike. By November 2, the District began announcing plans to replace striking teachers by as early as

November 18. Parental involvement eventually helped end the strike on November 4 after 14 days. The final contract was ratified in January, 1997, with the District stating an estimated cost of the strike at $300,000.00, including a need to sweep areas for electronic eavesdropping devices.

(h) In the 2000's the North Suburban Teachers' Union (NSTU)/Niles Township Federation of Teachers (NTFT) became a "breeding ground for union leadership", promoting leaders to the Illinois Federation of Teachers as field staff, IFT Executive Board members, and as IFT President, including former and current IFT Presidents. During the 2012 contract negotiations, a federal mediator had to be used to avert a strike. In 2015 the teachers and support staff unions merged to increase union strength and create a wall to wall union.

## The 2015 School Board Election Ends With the Teachers Union in Control of the Board

27. This long history of union discord within the District continued unabated and intensified during the Board election in 2015. "Progress 219," a Union-backed Political Action Committee (PAC), succeeded in gaining four of the seven board seats, despite the fact that its highest vote getter collected only approximately 2,969 votes.

28. Any objective reading of the documents and circumstances of the 2015 Spring School Board election shows conclusively that "Progress 219," the PAC that funded the campaigns of the newly elected board members and the Union are alter-egos. Progress 219's Form D-1 Statement of Organization filed with the Illinois State Board of Elections goes so far as to list the Union's Skokie address as the address for the PAC. Upon information and belief, a copy of the Form D-1 is in the Board's possession. The D-1 form is also signed by the President of the Union, Steve Grossman. The form also requests that any residual funds after the election are to be transferred to Local 1274, North Suburban Teachers Union. The D-1 Form states that the organization's purpose is to "support candidates who share the ideology of our organization." In addition, the Progress 219 website apparently has not been touched since the election. *See*, www.progress219.org. Five of the six persons on the candidate selection committee are union teachers and officers. The 2010 Census for

population in Niles Township is 105,882 residents. The top vote getter in the election had 2,969

votes. Therefore, being well-organized and institutional, it was easy for the Union to effectively hand

pick its school board through its PAC. The newly elected Board members then successfully

maneuvered to take over all of the officer positions, removing veteran Board members Klint and

Evans from their officer positions and effectively causing the resignation of veteran Board member

Silverman. While none of this political activity is improper under existing law, this ability of a union

PAC to easily take over an elected school board is the subject of considerable public debate in

Illinois is light of the State's dire financial condition, brought on in significant part by the lack of

funding of public pensions, including those to teachers and school administrators. And it is into the

middle of this fray that District 219 and Dr. Gatta unfortunately find themselves.

29. Newly elected Board President, Mark Sproat ("President Sproat"), ran on the Union slate

and is fully aligned with the Union's agenda. At various times, Dr. Gatta confronted President Sproat

over the Union's undue influence and violations of the Open Meetings Act. These instances

included, but are not limited to the following: (1) President Sproat attempted to intervene making

the Union's argument that the District need not publish the names of disciplined employees as

required by the Open Meetings Act; (2) President Sproat, without the authority of the Board,

approved a residency transfer request directly with a family even though Dr. Gatta told him that it

was a violation of policy and past practice; (3) President Sproat ordered Dr. Gatta to create a new

communications department mere days before the start of the school year without the proper

approval and vote of the Board and then retaliated against Dr. Gatta when she insisted that the matter

be put before the Board; and, (4) when the Union became aware of President Sproat's intentions

regarding the creation of the new communications department and its impact on Union teachers,

upon information and belief, the Union pressured Sproat to accuse Dr. Gatta of acting improperly so that he could save face with the Union.

## The Union-Board's Pre-Arranged Plan to Fire Dr. Gatta and Justify It Later

30. By removing Dr. Gatta as Superintendent, President Sproat will be able to dismantle several of Dr. Gatta's initiatives that are not considered "Union friendly" by the Union, such as:

(a) Dr. Gatta and her administration privatized work that was outside District 219's core competency, teaching and learning. This resulted in decreased labor costs for the tax payer and the loss of dozens of Union jobs in the areas of maintenance, custodial, secretarial, security, bussing and food service;

(b) Dr. Gatta and her administration formed a partnership with an outside healthcare provider. This resulted in a further loss of Union jobs, nurses, psychologists and social workers. The Health Clinics brought more services to students at a decreased cost to the taxpayers; and,

(c) Dr. Gatta and her administration began work to consolidate the nine feeder districts into District 219, known as Classrooms first Consolidation. The program aligned curriculum and assessment programming from kindergarten through 12th grade and created efficiencies in administrative and purchasing costs. The Union was also against this initiative as it realigned spending away from what the Union perceived as their tax dollars. It further utilized teachers to teach in a K-12 continuum which made them in effect only part time teachers and union members of the North Suburban Teachers Union and Niles Township Federation of Teachers.

31. Even before the Union backed candidates were elected, they spoke of its opposition to Dr. Gatta's outsourcing plans and the Health Clinic and Classroom First Initiatives during the candidate debates on February 26, 2015, and March 12, 2015—all good faith initiatives of Dr. Gatta to protect the taxpayers of the District. The plan put newer, better, more efficient health clinics in the District's schools, but had the collateral consequence of eliminating Union jobs to free up room for nurses and other non-Union medical staff at these clinics. On July 13, 2015, President Sproat went so far as to attack Dr. Gatta in open session regarding placement of research for the school clinics on the agenda without being sent to committee and her family members. The Union's public

comment and opposition to these programs it considered against its interests can be read in the minutes or watched on the video of the Board of Education Meetings on August 4, 2014 (Classrooms First), November 17, 2014 (Health Clinics) and May 18, 2015 (outsourcing). *See,* url.d219.org/meeting-minutes.

32. Much to the further chagrin of the Union, Dr. Gatta did not recommend the approval of a paid leave for the Union President or a subsidy for the daycare center for employees' children during the closes session meeting on June 15, 2015. This resulted in President Sproat interrogating her in front of the Union leadership. Dr. Gatta was wrongfully accused of not accurately presenting the issues and financials of the two Union requests.

### Events Immediately Prior to Dr. Gatta's Dismissal
### and President Sproat's Irreconcilable Conflict of Interest

33. The final heated exchange between President Sproat and Dr. Gatta happened the night before, and the early morning, of the day she was directed to leave her office, August 7, 2015. As referenced above, President Sproat had instructed Dr. Gatta to create a new department of communications to house debate, public speaking and broadcasting. In the closed session meeting of July 13, President Sproat told Dr. Gatta and the Board that his daughter was in debate, and as a debate parent it would further the programming. President Sproat went on to advocate making the debate coach an administrator and head of the department. Dr. Gatta sent President Sproat a draft proposal, but told him that this was something that should be brought up at a Board meeting, and not in an *ex-parte* meeting with her.

34. President Sproat disagreed with Dr. Gatta and insisted that it did not need to go to the Board. Dr. Gatta disagreed, stating the hiring of new administrators required Board action. Unhappy with Dr. Gatta's insistence on bringing this to the Board in open session, President Sproat told Dr.

Gatta to place the issue on the "consent" agenda of the next Board meeting since he already had the votes to carry the matter. In public open session, veteran Board members removed the item from the Board's consent agenda items, stating their grave concerns of timing, violations of the Open Meetings Act, and disruption to the school year, now just four days away. The motion later nevertheless passed with four yes votes, two no votes, and one abstention on August 4, 2015.

35. As charged to do by the Board, Dr. Gatta and Mr. Heintz, the Assistant Superintendent, hired the debate coach as an administrator and changed and hired teachers to pick up the classes once taught by the debate coach. However, 48 hours after official action had been taken at the meeting, and several minutes after corresponding by email with the Union President, President Sproat sent Dr. Gatta and Mr. Heintz an email telling them to reverse all actions concerning the communications department and revoke the job offers to the new administrators and teachers. President Sproat's new directives to Dr. Gatta and Mr. Heintz were directly contrary to the answers he provided to his fellow board members two nights earlier at the August 4, 2015, Board meeting and in several prior email communications with Dr. Gatta.

36. Dr. Gatta challenged President Sproat, as did another veteran board member, Ruth Klint, in an email exchange on August 7, 2015, concerning President Sproat's disregard for the Illinois Open Meetings Act. The Act requires that "all meetings of public bodies shall be open to the public" (5 ILCS 120/2 (a)). Specifically, the Act requires that "citizens shall be given advance notice of and the right to attend all meetings at which any business of a public body is discussed or acted upon in any way" (5 ILCS 120/1). Board member Klint informed the Board in writing that the communications department actions could not be reversed on President Sproat's mere say-so, because the Board had taken official action in that regard. Ms. Klint also expressed her grave

concerns over violations to the Open Meetings Act and continued discussions with the Union over board business.

37. Approximately two hours after having been informed by Board Member Klint of the deficiencies in his demands, President Sproat took action to suspend Dr. Gatta. President Sproat provided Dr. Gatta with a letter effectively dismissing her, and, shortly thereafter, arranged for her email and phone to be shut off, making it impossible for her to perform any essential job functions.

38. Dr. Gatta repeatedly reached out to the Illinois Association of School Boards, Barbara Tooney and Cynthia Woods to report violations of the Open Meetings Act and inappropriate school governance. Dr. Gatta thus qualifies as a whistle blower under the Illinois Whistleblower Act (740 ILCS 174/1, *et seq.*), and is being irreparably harmed because of it. The examples provided in this Complaint are a few of many that illustrate the retaliation against Dr. Gatta and the impossibility of a fair hearing before this Board, which is currently operating under a severe and irreparable conflict of interest.

39. Specifically, upon information and belief, President Sproat is laboring under a severe and irreparable conflict of interest in taking any actions as a Board member against Dr. Gatta. President Sproat, because of his misguided and ill-informed attempts to create a new communications department to benefit his daughter and to curry favor with the debate coach, has now inserted his own personal interests in the central issue involving his attempt to terminate Dr. Gatta and to insure the Union that he will forcefully do its bidding.

**The Board's Campaign of Creating False and Defamatory Innuendo**

40. Faced with Dr. Gatta's decades-long history of stellar performance in the District, upon information and belief, the Board has begun a public campaign to undermine her reputation so that

when the foregone strategy of terminating her employment as Superintendent was finalized, the public would have been both aroused against her and tranquilized and hypnotized into accepting the Board's decision to do so. In that regard, with President Sproat at the helm, notwithstanding his conflict of interest, he caused the Board to carry out the following actions:

(a) The Board called a Special Meeting for August 10, 2015, partially in Closed Session "To consider the appointment, employment, compensation, discipline, performance or dismissal of specific employees of the Board and/or legal counsel for the Board." At the August 10 Meeting, the Board approved resolutions to retain the services of a firm by the name of 4 Discovery LLC "as the firm to conduct computer forensic data retrieval, consulting and expert services for the Board; approved a motion to appoint a firm by the name of Sikich LLC "as the firm to conduct a forensic audit"; and the law firm of Mayer Brown "as additional outside counsel to assist the board in review of employee matters."

(b) At a Special Board Meeting on August 25, 2015 ("the August 25 Meeting"), the Board retained the services of the law firm of Franczek Radelet to assist it in "all" matters. At the August 25 Meeting, the Board also retained the services of Jasculca Terman and Associates, a new public relations firm, and announced that these retentions would allow the Franczek and Jascula firms to "work together as needed on the investigation." The Board announced that the retention of the Jascula firm was required because the Board "is anticipating significant communication needs as it addresses issues which may come before it in the upcoming months and wants to be sure the district has the capacity to respond properly, accurately and as transparently as possible." At this same meeting, the Board engaged the Sikich LLC firm "for select investigative accounting services . . ."

(c) Citing an alleged "conflict of interest" involving Mayer Brown, the Board announced on August 25, 2015, in an Open Meeting that it had purportedly retained the law firm of Greensfelder, Hemker and Gale, with attorney Ricardo Meza as lead counsel, to replace the newly retained Mayer Brown, "as special investigative counsel." Upon information and belief, the Board made this announcement at the suggestion of its newly retained law firm of Franczek & Radelet, in order to attract readers to the Greensfelder firm's website, where Mr. Meza's biography begins as follows: "Ricardo Meza's background as an Assistant U.S. Attorney and Illinois executive inspector general gives him a deep context for his litigation work, which includes internal investigations, white-collar criminal defense and government interaction." This was a calculated, unfounded and bad faith decision so as to create the innuendo that Dr. Gatta had engaged in some behavior involving financial irregularities;

(d) On August 31, 2015 the Board released a public statement ("the August 10 Press Release") sent at least to all parents in the District and intended for further dissemination by the media, noting that Dr. Gatta was on paid leave "until further notice" and further specifically noting that the Board had retained "1. 4Discovery, a forensic IT consulting firm;

2. Kikich LLC, and accounting firm; and 3. Mayer Brown, as outside legal counsel to assist the Board in review of particular employment-related matters."; and,

(e) Upon information and belief, President Sproat has also begun discussing the Board's purported "investigation" in unprivileged conversations with members of the community in an attempt to defame Dr. Gatta.

41. All of the above activity was a deliberate attempt by the Board to create innuendo in the media that would permit it to gain a civil advantage in the resolution of Dr. Gatta's valid contract; and to avoid any negative publicity it would receive for being required under the terms of her contract to negotiate in good faith when it and the Superintendent have arrived at "irreconcilable differences," as is obviously the case here.

### The Board's Breach of the 2014 Contract

42. Dr. Gatta has fully performed her obligations under the 2014 Contract.

43. Paragraph eight of the 2014 Contract governs its termination. Paragraph 8(D) of the 2014 Contract limits the Board's right to discharge Dr. Gatta for purposes of this Complaint to reasons "For Just Cause" and denotes those causes.

44. Paragraph 8(D) of the 2014 Contract specifically prohibits the Board from terminating Dr. Gatta's employment for invented reasons. Such subsection specifically and affirmatively provides that *"The Board will not arbitrarily or capriciously call for the dismissal of the Superintendent."* [emphasis added] Nevertheless, this is exactly what is transpiring if this Board is to continue taking action against Dr. Gatta with Mr. Sproat serving as President

45. The Board has already terminated Dr. Gatta's employment in all but name and any continued "due process" to be afforded Dr. Gatta will become a sham if President Sproat is allowed to remain involved in any further activity regarding Dr. Gatta's employment.

46. While awaiting the official culmination of the Board's dismissal campaign against her, Dr. Gatta remains a paid District 219 employee.

47. The Defendants, and each of them, while acting under the color of state law, have acted to infringe upon the free speech, free association, and redress of grievances rights of District 219 employees in general, and Mr. Perez and Dr. Gatta in particular, by adopting, enforcing, and advocating the Shut-Up Directive, which constitutes an actual and official policy having the force of law in District 219.

48. Among the issues of public concern in District 219 and in which its employees have an interest in speaking out publicly are the proceedings against Dr. Gatta, including all of the background facts alleged in paragraphs 22-47 hereof ("the District 219 Public Controversies").

49. The Shut-Up Directive unduly burdens District 219 employees of every stripe by the requirement that they could not communicate in any way whatsoever with representatives of any "representative of the media" but instead making the Board's controlled spokesperson, Jim Szczepaniak the spigot who determines whether any District 219 employee is allowed to speak his/her mind. Absurdly, under the terms of the Shut-Up Directive, even Dr. Gatta herself and Perez, her own husband, also a District 219 employee, must refer their own comments regarding the District 219 Public Controversies to the Board's spokesperson. Thus, the Board even purports to control Dr. Gatta's defense to her own dismissal.

50. By carrying out the customs, usages, and policies having the force of law described hereinabove Defendants sought to, and no doubt have dissuaded District 219 employees in general, and Mr. Perez and Dr. Gatta in particular, from fully commenting and in other cases from commenting at all on the District 219 Public Controversies.

56. Only the Defendants know the true and full extent of their agreements to engage in the described suppression of free speech, but in general, Defendants Sproat and Ko have formulated the wrongful conduct and engineered the Board's consent to carrying it out, the Board has followed Sproat and Ko's wishes and adopted the policy and authorized the Shut-Up Directive and Roloff has carried out the Board's desires regarding same by her drafting and distribution of same. All of the Defendants have knowingly allowed the conduct to continue, thereby instituting, and/or ratifying same on behalf of District 219. There may be overlap of the roles currently unknown to Dr. Gatta. There may be other Board Members and/or District 219 employees who are also actively suppressing free speech in that District, and Plaintiffs are not waiving any claims against those persons if later discovered by Plaintiffs.

57. Mr. Perez, Dr. Gatta, and all other District 219 employees have sustained actual damages due to the infringements described herein upon their rights of free speech and free association, and Mr. Perez, Dr. Gatta, and all other District 219 employees have sustained actual damages regarding her right to seek redress of her grievances by reason of their having to retain counsel to vindicate their rights, to cause the Shut-Up Directive to be withdrawn, and due to the stress, unease, and humiliation attendant to the infringements and attempting to overcome them. Even if the Court were to find no actual damages, Mr. Perez, Dr. Gatta, and all other District 219 employees are still entitled to nominal and punitive damages and reimbursement of their attorneys' fees by reason of the Defendants' violations of their free speech.

58. The Defendants' wrongful actions against Dr. Gatta and all other District 219 employees were taken with malice, and with the actual intent to injure Dr. Gatta and all other District 219 employees in the exercise of their Constitutional rights.

59. Mr. Perez, Dr. Gatta, and all other District 219 employees are without an adequate remedy at law, and have and will continue to suffer irreparable injury, unless Defendants are enjoined from enforcing the Shut-Up Directive, and unless such other and further relief is entered against the Defendants to ensure that Mr. Perez, Dr. Gatta, and all other District 219 employees' rights to free speech and free association are protected.

60. Mr. Perez, Dr. Gatta, and all other District 219 employees possess certain and clearly ascertained rights to free speech, association, and redress of grievances that needs protection.

61. Mr. Perez, Dr. Gatta, and all other District 219 employees will suffer irreparable injury without the protection of an injunction to protect their said rights.

62. Mr. Perez, Dr. Gatta, and all other District 219 employees have no adequate remedy at law for their injuries.

63. Mr. Perez and Dr. Gatta are likely to be successful on the merits.

Wherefore, Mr. Perez and Dr. Gatta pray that this Court enter a money judgment in each of their favor and in favor of every other employee of District 219 in an amount equal to their damages for the Defendants' infringement of their First Amendment rights to free speech, free association, and redress of grievances, plus punitive damages (except against the Board), prejudgment interest, and reasonable attorneys' fees, enjoining District 219 from enforcing the Shut-Up Directive, and for such other and further relief in Mr. Perez's and Dr. Gatta's favor as this Court deems fair and just.

### Count 2. Free Speech Violations Under the Illinois Constitution

1-63. Mr. Perez and Dr. Gatta reallege and incorporate by reference the allegations of paragraphs 1-63 of Count I.

64. Defendants' actions in creating and enforcing the Shut-Up Directive also violated Article I, Section 4 of the Illinois State Constitution and Mr. Perez, Dr. Gatta, and all other District 219 employees suffered damages akin to those proximately caused by Defendants' violations of the Illinois state Constitution as under the Federal violations.

Wherefore, Mr. Perez and Dr. Gatta pray that this Court enter a money judgment in each of their favor and in favor of every other employee of District 219 in an amount equal to their damages for the Defendants' infringement of their First Amendment rights to free speech, free association, and redress of grievances, plus punitive damages (except against the Board), prejudgment interest, and reasonable attorneys' fees, enjoining District 219 from enforcing the Shut-Up Directive, and for such other and further relief in Mr. Perez and Dr. Gatta's favor as this Court deems fair and just.

Fernando Perez and Dr. Nanciann Gatta

By:_____
One of Their Attorneys

Thomas Anthony Durkin          Keevan D. Morgan
Christopher Grohman            Alanna G. Morgan
Robin Waters                   Morgan & Bley, Ltd.
Durkin, Roberts, & Grohman     900 W. Jackson Blvd.
2446 N. Clark Street           Suite 4 East
Chicago, Illinois 60614        Chicago, Illinois 60607
312.913.9300                   312.243.0006
Attorney Number: 39333         Attorney Number 22545